UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FURNITURE BRANDS INTERNATIONAL, INC.,**

    **Plaintiff,**

    **v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION, et al.,**

    **Defendants.**

Civil Action No. 11-00202 (JDB)

## MEMORANDUM OPINION

Furniture Brands International, Inc. ("plaintiff") has brought suit against Customs and Border Protection ("Customs"), the International Trade Commission ("ITC"), and, in their official capacities, Customs Commissioner Bersin and ITC Chairperson Okun (collectively "defendants"), to recover funds it believes it is owed under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), 19 U.S.C. § 1675c, repealed by Pub. L. No. 109-171, § 7601, 120 Stat. 154 (Feb. 8, 2006). Before its repeal, the CDSOA directed Customs to redistribute money that it collected pursuant to an individual antidumping duty to "affected domestic producers."[1] Id. § 1675c(d)(3). The ITC would provide Customs with a list of these "affected domestic producers" based on the producers' support for levying that antidumping duty. Id. § 1675c(d)(1).

Plaintiff seeks a declaration, under the Declaratory Judgment Act, 28 U.S.C. § 2201, that

---

[1] "The terms 'dumped' and 'dumping' refer to the sale or likely sale of [foreign] goods at less than fair value" in the United States. 19 U.S.C. § 1677(34).

the CDSOA's definition of "affected domestic producer" violates the First Amendment to the extent that a producer is required to support an antidumping duty in order to receive a distribution. Furthermore, plaintiff requests that the Court order the ITC, pursuant to the Administrative Procedure Act, 5 U.S.C. § 702, to include plaintiff on its list of "affected domestic producers" and order Customs to distribute to plaintiff its share of the antidumping duty funds. Because the finite funds collected under an individual antidumping duty are divided among affected producers, the following affected furniture manufacturers have intervened in this litigation: Kincaid Furniture Co., Inc.; L. & J.G. Stickley, Inc.; Sandberg Furniture Mfg. Co., Inc.; Stanley Furniture Co., Inc.; T. Copeland & Sons, Inc.; and Vaughan-Bassett Furniture Co., Inc. (collectively "defendant-intervenors").

Defendants have filed motions to dismiss for lack of subject matter jurisdiction, contending that the Court of International Trade ("CIT") has exclusive jurisdiction pursuant to 28 U.S.C. § 1581(i). Defendant-intervenors, in addition to moving to dismiss for lack of subject matter jurisdiction, have moved to dismiss or transfer the case under the first-to-file rule. Plaintiff originally filed a virtually identical suit at the CIT in 2007. <u>Furniture Brands Int'l, Inc. v. United States</u>, No. 07-00026 (Ct. Int'l Trade Jan. 23, 2007). Although the parties have fully briefed the merits in that case, plaintiff has moved to dismiss its own complaint, arguing that the CIT lacks subject matter jurisdiction. Pl.'s CIT Mot. to Dismiss or Amend Compl., <u>Furniture Brands Int'l, Inc.</u>, No. 07-00026. For the reasons detailed below, the Court will dismiss this action pursuant to the first-to-file rule in deference to the earlier action pending before the CIT.

## BACKGROUND

**I.    Statutory Framework**

Customs collects an antidumping duty when (1) the Commerce Department "determines that a class or kind of foreign merchandise is . . . sold in the United States at less than its fair value" and (2) the ITC determines that a U.S. industry is, or is threatened with being, "materially injured" because of "imports of that merchandise." 19 U.S.C. § 1673. In 2000, Congress passed the CDSOA, which directed Customs to distribute money that it has collected pursuant to an antidumping duty to certain "affected domestic producers." 19 U.S.C. § 1675c(e) (repealed in 2006). The CDSOA directed Customs to deposit funds collected pursuant to an individual antidumping duty into a segregated "special account[]." Id. § 1675c(e). The ITC would then send Customs a list of "affected domestic producers"— defined as producers who petitioned for an antidumping duty or "indicate[d] support of the petition by letter or through questionnaire response." Id. § 1675c(d)(1). Customs would distribute the funds from the special account to "affected domestic producers" based on their share of "qualifying expenditures." Id. §§ 1675c(b)(4), (d)(3). On June 1, 2006, Congress repealed the CDSOA but provided that it would continue in force for "[a]ll duties on entries of goods made and filed before October 1, 2007." Pub. L. No. 109-171, § 7601(b), 120 Stat. 154 (Feb. 8, 2006).

**II.    Plaintiff's Challenge to the CDSOA**

In 2003, the ITC began investigating whether Chinese wooden bedroom furniture manufacturers were dumping their products on the U.S. market. Wooden Bedroom Furniture from China, 68 Fed. Reg. 63816, 63817 (Nov. 10, 2003). In relation to this investigation, plaintiff responded to the ITC's questionnaire and indicated that it was opposed to levying any

antidumping duties on imports of Chinese wooden bedroom furniture.  Compl. [Docket Entry 1] ¶ 31.  Based on its investigation, the ITC ultimately issued an antidumping order against imported Chinese wooden bedroom furniture.  Wooden Bedroom Furniture from the People's Republic of China, 70 Fed. Reg. 329 (Jan. 4, 2005).  Because plaintiff opposed the imposition of this antidumping duty in its questionnaire, plaintiff was statutorily excluded from the list of "affected domestic producers."  See Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 71 Fed. Reg. 31336 (June 1, 2006).  Customs distributed funds under the wooden bedroom furniture antidumping duty in Fiscal Years 2006, 2007, and 2008.  Plaintiff challenges its exclusion for each of those years.

Plaintiff filed a complaint in the CIT on January 23, 2007, claiming, like here, that it was entitled to a CDSOA distribution because the CDSOA's definition of "affected domestic producer" violates the First Amendment insofar as it requires a producer to support an antidumping duty in order to receive a distribution.  CIT Compl., Furniture Brands Int'l, Inc., No. 07-00026.  At that time, plaintiff asserted that the CIT had exclusive jurisdiction pursuant to 28 U.S.C. § 1581(i).  Id. at 2.  On June 25, 2007, the CIT stayed plaintiff's case pending the resolution of similar First Amendment challenges to the CDSOA in the Federal Circuit.  After the Federal Circuit upheld the constitutionality of the CDSOA in SKF USA, Inc. v. U.S. Customs & Border Protection, 556 F.3d 1337 (Fed. Cir. 2009), the CIT ordered plaintiff to show cause why its claim should not be dismissed.

In the wake of the Federal Circuit's rejection of plaintiff's First Amendment argument, plaintiff moved to dismiss its CIT action for lack of subject matter jurisdiction and filed an identical action in this Court.  Again, plaintiff asks that this Court declare that the CDSOA is

unconstitutional, order the ITC to name it an "affected domestic producer," and order Customs to distribute to it a share of money from the antidumping fund. Defendants have moved to dismiss for lack of subject matter jurisdiction. Following that motion, this Court stayed briefing on the merits in order to first determine whether the Court has subject matter jurisdiction. Order [Docket Entry 18]. Defendant-intervenors then entered this litigation unopposed and, in addition to moving to dismiss for lack of subject jurisdiction, moved to dismiss or transfer the action under the first-to-file rule because of plaintiff's pending case in the CIT.

## STANDARD OF REVIEW

District courts have the discretion to stay or dismiss a pending suit when confronted with parallel litigation of factually related cases filed in two separate forums. Handy v. Shaw, 325 F.3d 346, 349 (D.C. Cir. 2003). In fact, the Supreme Court has stated that "though no precise rule has evolved, the general principle is to avoid duplicative litigation" between federal district courts. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (citations omitted).[2]

Moreover, it is well-established in the D.C. Circuit that "[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." Washington Metro. Area Transit Auth. v. Ragonese, 617 F.2d 828, 830 (D.C. Cir. 1980) (citations omitted). The Circuit has warned against mechanically applying the first-filed rule if the second-filed action deserves priority, see Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620, 628 (D.C. Cir.

---

[2] The CIT "is a court established under article III of the Constitution of the United States." 28 U.S.C. § 251.

1975), but "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously," Ragonese, 617 F.2d at 830; see also Columbia, 525 F.2d at 626 ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided."); Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan, 1992 WL 345629 at *2 (D.D.C. 1992) ("This principle of judicial comity is derived from the policies favoring the conservation of judicial resources as well as providing for the comprehensive disposition of litigation before the federal courts.").

## **DISCUSSION**

Plaintiff readily acknowledges that "it has a parallel action pending at the CIT." Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss [Docket Entry 15] at 12. In both cases, plaintiff contends that the CDSOA's definition of "affected domestic producer" violates the First Amendment and it seeks to compel Customs to disburse its share of the funds from the segregated antidumping duty account. Accordingly, there is no question that this Court is presented with the second of "two cases between the same parties on the same cause of action." Ragonese, 617 F.2d at 830. In such situations, "[d]istrict courts have the discretion to stay or dismiss a pending suit." Poku v. FDIC, 752 F. Supp. 2d 23, 28 (D.D.C. 2010) (citing Handy, 325 F.3d at 349).

Plaintiff nonetheless contends that the Court "has an independent obligation to assess its jurisdiction over this case, and that determination cannot give way to prudential considerations." Pl.'s Mem. in Opp. to Def.-Ints.' Mot. to Dismiss [Docket Entry 27] at 12. Plaintiff's contention, however, directly contravenes Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S.

422 (2007), which "firmly establishes that certain non-merits, nonjurisdictional issues may be addressed preliminarily, because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'"  Public Citizen v. U.S. Dist. Court for the Dist. of Columbia, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting Sinochem, 549 U.S. at 431).  Plaintiff, with good reason, does not dispute that the first-to-file rule is one such "non-merits, nonjurisdictional issue[]."  Id.; see, e.g., Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 606 (5th Cir. 1999) ("[T]he 'first to file rule' . . . determines which court may decide the merits of substantially similar cases."); Long v. CVS Caremark Corp., 695 F. Supp. 2d 633, 637 (N.D. Ohio 2010) ("A dismissal based on the first-to-file rule is disposed of on a ground which does not go to the merits of the action.") (internal quotation marks omitted).

At oral argument, plaintiff introduced five cases which it contends are examples where courts found that it was necessary to determine jurisdiction before considering whether to dismiss or transfer on first-to-file grounds.  None of these cases, however, suggest that this Court must examine its subject matter jurisdiction before dismissing on first-to-file grounds.  Three of the cases are simply examples where courts explained the first-to-file rule using the phrases "obtain jurisdiction" and "acquire jurisdiction" in a non-technical manner to mean when the plaintiff commenced the action.  See Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1004 (8th Cir. 1993) ("[T]he district court first obtaining jurisdiction over the parties should proceed to adjudicate the controversy."); Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982) ("[T]he court which first acquired jurisdiction should try the lawsuit."); O'Hare Int'l Bank v. Lambert, 459 F.2d 328, 331 (7th Cir. 1972) ("[T]he first federal district court which obtains jurisdiction of parties and issues should have priority.").  For example, the Pacesetter court

explained that by "acquired jurisdiction" it was referring to when the "federal action [was] commenced," not when the court decided that it had subject matter jurisdiction. 678 F.2d at 96 n.3. Notably, none of these three courts actually discussed whether a court was required to address subject matter jurisdiction before turning to the first-to-file rule. Hence, these cases do not present any authority for the proposition that a court must decide its subject matter jurisdiction before dismissing on first-to-file grounds.

Although the other two cases that plaintiff introduced at oral argument discuss whether a court must determine its subject matter jurisdiction before relying on the first-to-file rule, those cases are similarly inapposite. In Zavanna, LLC v. RoDa Drilling Co., 2009 WL 3720177 (D.N.D. 2009), the court discussed whether it had the power to transfer a case based on first-to-file considerations when it lacked subject matter jurisdiction. That court, however, was merely addressing whether a "court lacking subject matter jurisdiction can[] transfer a case to another court under 28 U.S.C. § 1404(a)." Id. at *14. The court emphasized that it was only engaging in "statutory construction of the transfer statutes." Id. at *15. Zavanna said nothing as to whether a court must determine its subject matter jurisdiction before *dismissing* an action on first-to-file grounds.

Similarly, in Patterson v. Drews, the court stated that "the 'first to file' rule is a doctrine allowing a district court to transfer, stay or dismiss a complaint over which it does have jurisdiction when a similar complaint has been filed in another district court." 2009 WL 2474687, *4 (N.D. Cal. 2009) (citing Alltrade Inc. v. Uniwield Products, Inc., 946 F.2d 622, 623 (9th Cir.1991)). That court, however, appears to miscite Alltrade for that proposition, which says nothing about whether a court must "have jurisdiction" in order to dispose of a case on first-to-

file grounds. See 946 F.2d at 623 (noting that the "'first to file rule,' . . . allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court," without mentioning anything about its jurisdiction). The Patterson court also suggests that a court must determine its jurisdiction because "'jurisdiction [must] be established as a threshold matter.'" 2009 WL 2474687 at *4 (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)). As discussed above, however, the Supreme Court explained in Sinochem, 549 U.S. at 431, that "[j]urisdiction is vital only if the court proposes to issue a judgment on the merits," and the Patterson court never suggests that relying on the first-to-file rule is a decision on the merits.

It is worth noting that in Zavanna and Patterson the courts were clearly devoid of subject matter jurisdiction. That is not the case here. When subject matter jurisdiction is clearly lacking, it conserves judicial resources to dismiss a case for lack of subject matter jurisdiction. Plaintiff, however, cites no case where a court facing an open question regarding subject matter jurisdiction found that it must first determine its subject matter jurisdiction before relying on the first-to-file rule. And that jurisdictional dispute lies at the heart of plaintiff's dual filings. Indeed, it is difficult to imagine that a court would find that it must first determine subject matter jurisdiction when the very basis of the first-to-file rule is the avoidance of "the wasteful expenditure of energy and money incidental to separate litigation of identical issues." Columbia, 525 F.2d at 626.

Plaintiff further contends that, even if the Court is not required to decide jurisdiction, the first-to-file rule should not be applied when "subject matter jurisdiction lies exclusively in the second-filed court." Pl.'s Opp. to Def.-Ints.' Mot. to Dismiss 10. That argument, however, begs

the question of which court should decide the jurisdictional question. Plaintiff treats the jurisdictional question as if the CIT is clearly devoid of jurisdiction. The CIT, however, has taken jurisdiction in many other similar CDSOA claims. See, e.g., SKF USA, Inc. v. United States, 451 F. Supp. 2d 1355 (Ct. Int'l Trade 2006); Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n, 442 F. Supp. 2d 1329 (Ct. Int'l Trade 2006). Indeed, the one other district court in which a party attempted to challenge the CDSOA found that "Congress has vested exclusive jurisdiction over this matter with the [CIT] pursuant to 28 U.S.C. § 1581(i)." Pat Huval's Fisherman Wharf v. U.S. Int'l Trade Comm'n, 2006 WL 2460846 at *2 (W.D. La. 2006). Either the CIT or this Court will have to decide the jurisdictional issue, and tellingly, plaintiff advances no argument as to why this Court is in a better position than the CIT to do so.[3]

Not only is the CIT the first-filed court, but it is the court that is far better-positioned to decide this jurisdictional issue. In deciding which court should proceed first when presented with parallel filings, the D.C. Circuit has explained that it does not automatically "favor[] the first-filed action . . . because countervailing equitable considerations, where present, cannot be ignored." Columbia Plaza, 525 F.2d at 627. In Columbia Plaza, the court looked to (1) whether all parties are present in both cases, (2) the location of witnesses, and (3) the stage of the

---

[3] Plaintiff further suggests that this Court should determine whether "the first-filed court ha[s] subject matter jurisdiction over the plaintiff's claims" before deferring to the first-filed court because this Court did so in Poku, 752 F. Supp. 2d 23. Pl.'s Opp. to Def-Ints.' Mot. to Dismiss 11. Nothing in Poku, however, suggests that the Court is required to determine subject matter jurisdiction before dismissing on first-to-file grounds. Poku was merely addressing plaintiff's concern that the first-filed court did not have jurisdiction when "the case law overwhelmingly suggest[ed] otherwise." Poku, 752 F. Supp. 2d at 29. To determine the novel jurisdictional question here, which plaintiff acknowledges has "never before been presented to or considered by the CIT or the Federal Circuit," Pl.'s Opp. to Defs.' Mot. to Dismiss [Docket Entry 15] at 11, while the CIT is presented with the same question, would be an inefficient use of scarce judicial resources.

respective proceedings. Id. at 629. None of these equitable considerations favor this Court over the CIT for deciding the threshold jurisdictional question. All parties are present in both cases, no witnesses are necessary to determine the threshold jurisdictional issue, and briefing, both on the merits and on the jurisdictional issue, is complete in the CIT.

Moreover, other equitable considerations show that the CIT is the better forum to decide whether CDSOA distributions under 19 U.S.C. § 1675c fall within its exclusive jurisdiction under 28 U.S.C. § 1581(i), because the CIT is far more familiar with those statutes than is this Court. Although there is no question that this Court is competent to decide this question of statutory interpretation, the CIT must interpret its jurisdictional statute every time subject matter jurisdiction is questioned, and the CIT also has far more experience in interpreting the CDSOA. A Westlaw search of "Continued Dumping and Subsidy Offset Act" returns thirty-nine results in the CIT, while it returns none for the U.S. District Court for the District of Columbia. Similarly, a Westlaw search of the jurisdictional subsection at issue, 28 U.S.C. § 1581(i), returns 451 results in the CIT but only five results in the District Court for the District of Columbia.

Indeed, the CIT has many similar challenges still pending before the same three-judge panel. See Furniture Brands Int'l., No. 07-00026, Order to Show Cause (Jan. 3, 2011) (ordering forty-five other similar cases to show cause why they should not be dismissed). This three-judge panel, which is handling all similar challenges, further evidences the CIT's expertise in the matter. Moreover, whether or not parties in those matters challenge subject matter jurisdiction, the CIT necessarily will confront that issue if it rules on the merits in those cases. As this Court has explained, when another court is "actively wrestling with the issues presented" by multiple parties, it is "[f]ar better for the litigation to proceed in a single location" as the "possibility of

inconsistent results cannot be ignored." Entines v. United States, 495 F. Supp. 2d 84, 86 (D.D.C. 2007). Because equitable considerations favor the CIT for determining the threshold jurisdictional issue, and because the CIT is the first-filed court, this Court will defer to the litigation at the CIT and dismiss this case.[4]

## **CONCLUSION**

This Court will avoid duplicative litigation by deferring to the CIT to resolve this case. Hence, for reasons of comity and judicial economy, the Court will dismiss plaintiff's complaint without prejudice. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: August 15, 2011

---

[4] If this Court transferred this case to the Court of International Trade, it might be barred by that court's statute of limitations. 28 U.S.C. § 2401. Moreover, plaintiff indicated at oral argument that it would not be prejudiced by dismissal, rather than transfer.